Case No. 25-3149, Jennifer Kilnapp v. City of Cleveland OH et al., argument not to exceed 15 minutes per side. Mr. Russell, you may proceed for the appellant. May it please the court, counsel. My name is J.R. Russell. I have Afan Ali at the council table with me, and we represent Officer Bailey Gannon in this case. I would like to reserve the three minutes of my time for rebuttal. This case stems from the unfortunate circumstance of Officer Gannon accidentally striking his training supervisor with an errant bullet in a shootout with an armed and disturbed man in a dark, enclosed area of a boarding house. His training officer in this case raised two causes of action, one under the Fourth Amendment pursuant to 1983 and one under the Fourteenth Amendment pursuant to 1983. The District Court of this matter erred as a matter of law in denying Officer Gannon's motion for summary judgment and denying Officer Gannon the benefit of qualified immunity. Kilnapp cannot meet her burden of establishing, one, that there was a seizure. She cannot establish that the actions of Officer Gannon in returning fire on a perpetrator was objectively unreasonable given the totality of the circumstances. And Kilnapp did not effectively argue that there was a Fourteenth Amendment violation in response to Officer Gannon's motion for summary judgment. And even if there were arguable constitutional violations, none of those alleged constitutional violations could be clearly established at the time of the challenge conduct. The only way that Kilnapp can succeed on her claims in this matter is if this court or the Supreme Court overruled Claybrook and Buck prior to July of 2020 or there was a robust consensus of authority to the contrary. However, the opposite is true. The robust consensus of authority is that a situation like this could not be a clearly established violation. In Claybrook, this court said that a Fourth Amendment reasonableness standard does not apply to Section 1983 claims, which seeks compensation for physical injuries inadvertently inflicted upon and is a third party by the police officers used to force while attempting to seize a perpetrator. Was that dicta in Claybrook? I think it's fairly clear about what, especially given the facts of the case, and... Well, Claybrook says, on review, Quintana has disputed only the trial court's dismissal of her Fourteenth Amendment substantive due process claim. And I think mentioning, though, that is clear that that's the reason that she did not... That would mean, then, that the appeal is dealing only with the issue of the Fourteenth Amendment claim and not with the Fourth Amendment question of whether there's a seizure. And I think that that further supports that everyone understood that that was the consensus of authority at that time, that inadvertently striking someone, an innocent bystander, could not be a seizure. But that's different than saying that there is a binding decision that binds us, which is how you introduce this. Claybrook was decided in 2000. There have been cases subsequent to that. Claybrook, by virtue of my question, I'm asking you, isn't everything that they might say in that one paragraph dicta because they say, on review, the only issue is the Fourteenth Amendment issue? And I think this court then subsequently, in Buck, confirmed that. And I believe district courts and other courts have understood Claybrook to confirm the proposition of law, the general proposition of law, is that an innocent bystander is not subject to a seizure. Well, didn't our court in the prior appeal in this case distinguish Claybrook and say that there were later cases and say that, at least at the motion for judgment on the pleading stage, there was a seizure? Well, as this court pointed out, I think just last week in the Estep case, the decision on denial of a motion to dismiss is quite different from a decision on considering it with a motion for summary judgment. It's different because you look at the evidence that has been amassed in the summary judgment proceeding at summary judgment, whereas at motion to dismiss under 12b6 or 12c, you're looking at what's alleged in the complaint. So you're looking at different evidence. But if there are legal statements in an opinion by this court in this case at an earlier stage, if those are relevant, we would apply those. So what's different about the evidence on summary judgment than what was alleged in the complaint that would allow us to overturn our prior panel, which did say there was a seizure? I think in one specific case is that it was alleged in the alternative in the complaint and specifically mentioned by that panel below that Officer Gannon could have intended to shoot Kilnatt believing that it was Borden chasing him down the stairs. That was something specifically mentioned by the prior panel, and that turned out to not be the case at all. The circumstances are now, as the facts have developed, that change what happened vis-a-vis that statement in the complaint. That is correct. What changed? What's the theory of the case now of how the shots were fired or what happened? Yes, I'm sure my friend from the other side will get into this, but the theory is essentially that Officer Gannon, when he ran down the stairs after seeing the gunman, turned to return fire. He wasn't looking at a verified target, and he left Kilnatt in the crossfire. So he's just randomly shooting, basically? That's what they're saying happened? They're saying that he should not have, essentially, the evidence is that Borden shot from inside the bathroom, and their claim is that Officer Gannon should not have returned fire. Essentially, which we believe is a dangerous proposition to say that an officer is not able to return fire until they physically see the perpetrator when gunfire is… So the evidence is that the suspect actually shot at the officers? That is the only evidence that is in the record that the suspect shot first, Officer Gannon was returning fire, and that was the premeditated target. The target was, of course, not to shoot his training supervisor, who was also there on scene. The idea, the objective manifestation of his intent to restrain was the suspect. So this is a bystander being shot from officer returning gunfire, that's the theory? That is correct. But at the complaint stage, the theory was that the other officer, Kilnatt, was being shot at directly, intentionally, but that your client thought that the person he was shooting at was the suspect? That is correct. That was what was alleged in the complaint, and that was mentioned by the prior panel in this case. And simply, again, even to say that just because an officer pulls the trigger, that no matter who is struck with that, that that creates a seizure is contrary to the robust consensus of authority. The general rule is that when an innocent bystander is struck with an errant bullet, that that is not a seizure. The prior panel relied heavily on Brenlin to say, well, since Claybrook, the Supreme Court decided Brenlin. But Brenlin doesn't change the analysis here. First off, Brenlin was a motor vehicle case where an officer seized a motor vehicle on a stop, and effectively seized every occupant inside. But it is not helpful for an excessive force case. Secondly, Brenlin did not change what the test should be, as the court discussed in Torres, that it is the objective manifestation of intent to restrain. Well, didn't Gannon have an intent to restrain Borden? And so it happened that the shot that did actually restrain, restrained Kilnap, the other officer, instead. But that is true, that he intended to restrain Borden. But doing such a transfer of intent to an innocent bystander has never been permitted as a basis for a Fourth Amendment claim prior to July of 2020. It has not. It was not in Buck. It was not in Simpson from the Eighth Circuit. It was not in Corbett from the Eleventh Circuit. It was not in Benton from the Fourth Circuit. It was not from Irish in the Eighth Circuit. If this court says that just pulling a trigger, no matter who is struck, becomes a seizure, this court would be alone in that proposition. Because the courts have all said that it is the premeditated target. That's the one who has the objective manifestation of intent to restrain. And to do otherwise would violate the dictates of Wesby, Pauley, and the other cases from the Supreme Court to say you cannot judge what is clearly established at a high level of generality. How do you think Torres interrelates here? Torres says that the appropriate inquiry in determining whether force amounts to a seizure is whether the challenged conduct objectively manifests an intent to restrain. And there was an intent to restrain Borden. But how does Torres not point the opposite way? Because it's – Torres, obviously, it was decided after July of 2020, but still – So you agree, then, that Torres does point the opposite way from what you're – No, I'm pointing that out. But I don't – I think Torres – I think the Torres case actually helps Officer Gannon because it's this objective manifestation of intent to restrain. It does not mean that there is transferable intent. It means are the objective actions, reasonably looking at it, does that show an intent to restrain the person who is actually struck? In the totality of the circumstances, does that demonstrate that Officer Gannon had that intent? Now, there's some district courts in the Eighth Circuit that really delve into a subjective intent. They believe that Torres stands for the proposition that you have to look at the subjective intent of the police officer. But most of the cases, and I think the proper rule is that objective manifestation of intent to restrain says look at the whole facts. And was that officer intending to restrain the one who was actually struck? And I see my time is up. I'll talk to you again on the rebuttal. Thank you. Thank you, Your Honors. May it please the Court. I have a couple of points to make here. But first is that the quintessential character of qualified immunity appeals is that the defendant officer must accept the plaintiff's version of facts. Defendant Gannon uses his version of facts. He's not allowed to do that. And in particular, and we heard it in oral argument, it's in the brief, that Daryl Borden, the man in the bathroom, fired first. That is not the evidence in this case. There is, at most, for defendant Gannon, a question of fact whether Daryl Borden fired. Is it disputed that he did fire his gun, though? Not disputed that he did fire. But the evidence is, at best, disputed as to who fired first. There's testimony from... Is there any evidence as to which shot hit your client? Oh, undisputed from ballistics and from testimony that Officer Gannon shot Jennifer Kilman. Was it the first fired shot? We don't know whether it was his first or his second fired shot. But Officer Gannon told Homicide that he fired and then Daryl Borden fired. That was his statement to Homicide. The internal affairs investigators admitted we can't tell who fired first from the audio. So it is not the case that the only evidence in the record is that Daryl Borden fired first. Regardless, by the time Officer Gannon decided to fire, he was not in the line of sight or fire from Daryl Borden. In fact, Daryl Borden, and this is undisputed, was still in the bathroom behind the closed door when Officer Gannon had fled down the stairs and decided to open fire without looking. So you're saying it's undisputed that Borden was still behind the door? That's correct. Safety Director Drummond admits that ballistics and crime scene photographs show that. We know that because Daryl Borden fired twice through the door. Happens to be in the 180 degree direction opposite. Is there any testimony that Gannon thought that Kilnap was the suspect? Yes, so that's the second point here. Respectfully to counsel, the defendant doesn't get to decide what the plaintiff's theory of the case is. I'm just interested in what the evidence is. Yeah, so the evidence is ambiguous as to that. It was pleaded in the alternative. The theory has not changed. What we know is that he fired without looking, fired without aiming. But is there any evidence that he says from Gannon himself where he says, I thought it was the suspect I was shooting? He did not testify as to that. But if you think about it, either he looked and shot knowing Officer Kilnap was right there, or he didn't look. There must be a reason why he just decided to open fire. If he thought it was because someone was behind him, that only could have been Officer Kilnap. If he didn't think someone was behind him, then why is he shooting? And, in fact, training lieutenant, who's Kenneth Ryan. Couldn't he have thought it was Gannon behind him? Sorry, couldn't Gannon have thought it was Borden behind him? He could have. But that makes this an easy seizure case. Because the mistaken identity cases, those all say that's a seizure. Are you arguing that in this case, that it's mistaken identity? No, a jury could believe it's mistaken identity. The answer is it doesn't matter for purposes of seizure or reasonableness because, one, we have the evidence. But for me it matters because, for the law of the case, because I'm reading the earlier panel opinion as based on you're having pled mistaken identity in the complaint. And it doesn't sound like the facts are supporting that. It seems like it's more of just his shooting the gun and not thinking that he's shooting a particular target, he's just shooting his gun. I don't think, Your Honor, that that was the crux of the initial panel's decision. And it wouldn't be the law either. So here let me... Do you believe law of the case controls here for that earlier panel opinion? So law of the case is admittedly more prudential here than it would be at the district court. But, you know, this court's precedent tells us when we have the same issue, same facts, same court, we should have the same result. There are no different operative facts. The intervening law has not changed. And so there's not a reason to reach an alternative conclusion. I do... I'm sorry, Judge Davis. Well, I guess I'm... This is just following up on what Judge Bush is saying. I think that what you're saying is that you didn't understand the initial panel to take as the possibility, based on what was pled here, that there was mistaken identity? No. What we're saying is it was pleaded in the alternative. Could be mistaken identity. Might not be. But the answer is the outcome is the same either way. And you haven't abandoned that alternative possibility here based upon how the facts have unfolded in discovery, right? That's correct. And it would be a reasonable assumption for a jury to draw. But the answer is the outcome is the same either way. And if I could just step back, and if I've answered your question, is to talk about seizure law more generally. Torres reminds us that there are two categories of seizures. Seizures by force and seizures by acquisition of control. Which one is this? This is a seizure by force. This Supreme Court has said repeatedly, shooting someone is a seizure by force. We don't look to officer subjective motivation. We never have. Fourth Amendment jurisprudence tells us explicitly not to. Torres itself tells us explicitly that when we are evaluating intent to restrain, we look to objective facts. And explicitly not the officer's subjective motivations. So if this were a case of mistaken identity, what is your position as to the law then? That it would be a seizure if it is a case of Gannon thinking that he was shooting Borden when he actually was shooting Kilnab. Yes, I don't think there's any question about that. So do you have a couple cases that you would tell us this would be binding law that mistaken identity would be a seizure if the police officer shoots the wrong person?  So the circuits generally hold that a mistaken identity is a seizure. The ninth, third, second. What about the sixth? The sixth has not addressed this issue, but I would point out that the question under clearly established is a little bit different. The question under clearly established is would an officer have reasonable notice about their conduct? Is my conduct objectively reasonable? Do I have probable cause to use deadly force? Not is this conduct going to meet the technical legal definition of seizure? So the clearly established question doesn't look to is there a seizure. It looks to the officer's conduct. Are you contending there was not probable cause to use deadly force against Borden? That's correct. There was not. Officer Gannon was not in the line of sight or fire. The evidence is at best ambiguous about whether he was even pointing a gun. The evidence belies Officer Gannon's version of events that Borden was standing eight feet away holding the gun at a firing position. Either way, at the time Gannon fired, he's halfway down the stairs. Around the corner, Borden's in a closed bathroom door investigating IA Lieutenant, training Lieutenant Kenneth Ryan says, it would not be reasonable to fire at that point unless someone's firing through the wall back at him, which was not the case. I hope that answers your question. So as to the intent to restrain piece, the Torres seizure by force piece, we do distinguish an intent to restrain between accidental force and intent to restrain, but accidental force is did the officer in the analogy referenced in Torres and Sacramento versus Lewis, did the officer accidentally crash into the car to stop it? As opposed to, and this is Lewis and Brower. Let me ask you if this case was a bystander case. It seems like there are a lot of courts that have held bystanders getting shot in crossfire aren't seized for the Fourth Amendment. Why isn't this just a bystander case? Right. So there are a couple responses to that. This is the point of Torres, though. Torres makes clear we don't look to the officer's subjective motive. We look to. Right, but I'm not talking about subjective motive. I'm talking objectively what's happened. A bystander has been shot. No, no. The point is even a bystander is seized if the officer's act is intentional, and that's the intent in question. Torres tells us that. We don't look to subjective motivations of the officer. That's consistent with Supreme Court's Fourth Amendment jurisprudence, which tells us. It's intentional about what? Intentional to shoot the bystander? Intent to act. The intent to act, and that's the crux of Torres. But I thought the cases that have crossfire, there's obviously an intent to shoot, but they hit the bystander, and the bystander is not considered seized. Not after Torres, and not after Brenlin, right? So Brenlin is, and I'll respond to that. Brenlin is a seizure by control case. We're talking about seizure by force. But those cases, after Torres, I believe there's only one case. It's about a case called Plumhoff v. Rickard from the Supreme Court in 2014, which was, I think, after? After? Brenlin? After Brenlin, before Torres. And there's a footnote in that case, footnote four, and it said, there seems to be some disagreement among lower courts as to whether a passenger in Allen's situation, that was a situation where an officer was firing into the vehicle, and it was a passenger, whether they can recover under the Fourth Amendment theory. And so they note there's a conflict, and they say, we express no view on this question. So that question's open, it seems. So it seems that question is really open, isn't it? Whether or not, at least from the Supreme Court's perspective. The Supreme Court has not squarely answered this, but the answer is clear if we look at Torres, which tells us we don't look to the officer's subjective motivation. But again, the question I clearly established is, does the officer have notice of their conduct? We are cautioned not to have an overly rigid need for factual identity. The question is conduct. And as the court has made clear, I believe this is Saffold Unified School District. So you're saying that the bystander would, under your view of the law, the bystander would always have seized if they're shot when there's a crossfire between the police and a suspect. Only if the officer fired the gun intentionally. Well, they always fire the gun intentionally. Not so. What are you saying by intentionally? Intentionally, an act of volition. So if you intend to shoot the gun, that's intentional under your view, right? Correct. So the bystander is always seized. That's under your view. No, that is the law. It could be that the gun goes off accidentally. Right. As Gannon claims here for the other shot. I'm just trying to be clear. As long as the officer intends intentionally to shoot the gun as part of the crossfire, if a bystander is shot, they are seized. That's your position. It is. The officer will still have the protection of the reasonableness standard, and it will have the protection of qualified immunity as to their conduct. But there's no other way to read Brendlin, which said, an unintended person may be seized if the detention is willful and not the result of an unknowing act. You don't think the fact that Brendlin was in a car, that that makes a difference? It makes it analogous. But the question of the existence of a seizure is the same. So I have a question, which is, is there an intellectually sound difference between mistaken identity cases and innocent bystander cases as to whether there is a seizure? The whole crux of this argument is, was there a seizure when Gannon intentionally shoots his gun? It wasn't an accident that he juggled his leg and it went off. He intentionally shot his gun. He wasn't, of course, intending to shoot his partner. We all know that. But is it a mistaken identity case? Is it an innocent bystander case? Does it make a difference, which it is? It does not make a difference. And this is the point. So this is a seizure by force. Under Torres and the Supreme Court's longstanding precedent, we look to objective intent to commit the act, not the officer's subjective motivations. That has never been the Fourth Amendment jurisprudence, and it would be incongruous to hold otherwise. And we see that in other officer mistake seizure cases. So, for instance, if the police arrest the wrong person, they think they're arresting Jill, they're actually arresting Jane, still a seizure, regardless of the Supreme Court's, regardless of the officer's subjective intention. And there's just no other logical way to read it. I see my time is up. If I could finish. Whether this is a seizure by force or a seizure by control, you can't square making the dispositive question as to seizure whom the officer intended to seize, their subjective motivation, with the Fourth Amendment's longstanding jurisprudence that we look to objective intent and not officer subjective intentions. I refer the court back on this point to our brief before the initial panel, which has a longer discussion of the seizure by seizure question. Unless the court has further questions, thank the court for its attention. Ask it to affirm and remand. Could you indulge me of just one more question? One thing that's bothered me about this case is that it's a police officer pursuing another police officer for a Fourth Amendment violation. And it seems like they're both acting in the scope as government actors. So I'm having difficulty understanding how the government can violate the constitutional rights of the government here. Yes. So the case law says that police officers are still protected by the Fourth Amendment's prohibition on excessive force. And I see that the district court cited a Ninth Circuit case for that proposition. Do you know of any other authority besides that case for that proposition? I know there is other authority. Off the top of my head, I can't cite it for you now. What I would remind you is that I'm clearly established. The question is to the conduct, not the technical definition of seizure. Do they have notice? And that's why the court says. I don't think we need to establish that in our circuit in order to be clearly established. No, absolutely not. Was there a technical seizure or not? Did the officer have notice about their conduct? And we know that the obvious case doesn't need an exact analog in prior case law. And you don't have anything in the Sixth Circuit where a police officer is recovered against another police officer? We don't. Again, not needed on this question. Okay. Thank you. Thank you, Your Honor. Thank you. To go first to the last question that Judge Bush asked about the Ninth Circuit opinion about the government official, that case, I'm fairly certain, was a mistaken identity where an officer shot another officer who was playing close, believing that that person was the perpetrator, I believe off-duty. So I think that also dovetails into Judge Moore's question, which is does it make a difference if it's a mistaken identity? I disagree with my friend from the other side. I think it makes all the difference in the world. Why should it make a difference? Because a mistaken identity is the officer, that is the object of the officer's intent to restrain. And if you look at the analogy of a wrongful arrest, that an officer arrests someone that's a mistaken identity, that was the person that they intended to restrain. It just happened to be that that person had a different identity. Same thing with the mistaken identity cases. The Fourth Circuit case, Felton, discussed that just came out this year. I really am wondering why should it make a difference? Because if the officer is shooting, thinking he's trying to shoot an offender, and mistakenly shoots an innocent bystander, why shouldn't that be treated similar to mistaken identity? Because these are all analyzed under the Fourth Amendment. The Fourth Amendment houses these questions. What's different about the Fourth Amendment? Because, again, that is the government's intent to seize and control that individual. And if we're analyzing this under the Fourth Amendment, otherwise what you're doing, if you go the opposite way and say, well, anyone that's struck by a bullet, whether it was intended or not, what you're doing is you're creating a new tort under 1983 for negligence. No, you don't have to go that far. You're saying we're just looking at this narrow question, is there a seizure? And if the innocent bystander, if we're going to go that direction, if the innocent bystander is shot, they are in fact seized when that bullet hits them. Their argument would be because just as much as if the wrong person is shot when the police officer thinks it is the right person. I think it's dramatically different. I mean, if you look at the hostage cases, it's dramatically different, right? If there's a gunman holding a hostage and a police officer shooting at the gunman, attempting to let the hostage free, accidentally shoots the hostage, that wouldn't be a seizure either. So on the hostage cases, is there a Supreme Court case on hostages not being seized? There's not a Supreme Court case, but it was, you know, the circuit's all over the place. And I will end with this point, is that, again, if this court decides to adopt what we believe is a new rule or what we submit is against the robust consensus of authority, it still could not be clearly established. There's the LaRocca case out of a district court in Los Angeles that did seem to indicate that court believed that intending to shoot would create a seizure, but still that court said it can't be clearly established because no court has gone that far prior to 2020. All of the case law is that it's likely not to be a seizure, but the few that say that potentially it could be, that's not enough for clearly established. So is that true also for mistaken identity cases? I think mistaken identity, and again, the Belton case from the Fourth Circuit I think goes into that where an officer accidentally shoots another officer. There is more authority on a mistaken identity case. There's no authority whatsoever from a circuit court prior to 2020 to say an innocent bystander inadvertently struck by a bullet is subject to, is able to make a seizure claim. No. Thank you. Thank you both for your argument. The case will be submitted.